1
2
3
4
5
6
7
8
9
10
11
12
13
14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SAMUEL LEVY, on behalf of himself and all others similarly situated, | NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| PROLIANCE SURGEONS, INC., P.S., | |
| Defendant. | |

15      Plaintiff Samuel Levy ("Plaintiff"), on behalf of himself and all others similarly situated,

16   alleges the following Class Action Complaint (the "Action") against the above-captioned

17   Proliance Surgeons, Inc., P.S. ("Defendant" or "Proliance") upon personal knowledge as to

18   himself and his own actions, and upon information and belief, including the investigation of

19   counsel as follows:

20                          **I.      NATURE OF THE ACTION**

21      1.      Proliance offers specialist and surgical medicine to over 800,000 patients a year

22   across the state of Washington, including orthopedics, ENT services, general surgery,

23   ophthalmology, and other medical services.  With over 400 healthcare providers across over

24   100 locations in the state, Proliance is one of the top medical providers in Washington.

25      2.      In the course of servicing its patients, Proliance collected a significant amount of

26   data, including patients' personally identifiable information such as their name, date of birth,

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

medical information, diagnosis and treatment information, health information, and, for some, Social Security number ("PII").

3.      When patients disclosed this PII to Proliance, they did so under the impression that it would be protected in a manner consistent with how valuable this subset of PII is, especially because it includes identifying information in combination with protected health information ("PHI") as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

4.      However, on November 20, 2023, Proliance disclosed that the PII of over 430,000 current or former Proliance patients, including the PII of Plaintiff and the Class, had been compromised in combination with a cyberattack that occurred on February 11, 2023 (the "Data Breach").

5.      Unfortunately, even though the cyberattack occurred on February 11, 2023, Proliance failed to discover that files that were compromised contained PII until May 24, 2023: nearly three and a half months after the initial intrusion occurred.  This means that Proliance failed to adequately monitor its computer network for infiltrations of any sort, or that its monitoring (if any) was deficient at protecting Proliance's servers from intrusions like the one at issue.  Further, the amount of time that it took for Proliance to determine that files containing PII were compromised evidences Proliance's lack of a coherent cybersecurity strategy to protect sensitive information.

6.      To compound matters, Proliance, after taking three and a half months to ascertain that the Data Breach occurred, then took an additional four months to determine which victims were impacted and then another two months to disseminate notices to individual victims.  This means that, from the time that the Data Breach took place, Proliance needed nine and a half months to notify the victims of its inadequate protection of their PII.  Because of the sensitive nature of the PII that was compromised, every moment is precious in order to take preventative measures and to protect against the harm that data breaches cause.  Proliance's woefully insufficient response to this Data Breach significantly hamstrung victims' ability to

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  protect themselves.  Unfortunately for victims, the harms caused by a data breach, like the one

2  at issue, can ripple and last for a lifetime.

3         7.      As such, Plaintiff, on behalf of himself and all others similarly situated, brings this

4  Class Action seeking monetary damages, injunctive relief and a declaratory judgment, as well as

5  any other relief this Court may deem just and proper, for Proliance's negligence, breach of

6  implied contract, and violation of the Washington Data Breach Notice Act, RCW 19.255, *et seq.*,

7  and the Washington Consumer Protection Act, RCW 19.86, *et seq*.

8         8.      Given the scope of the PII compromised by Proliance, only one year of credit

9  monitoring (which is what Defendant is offering to victims) is unacceptable as it does not

10  remediate the harm Proliance has caused.  Plaintiff and the Class seek at least three years of

11  credit monitoring in addition to seeking the above stated relief.

12               **II.**     **JURISDICTION AND VENUE**

13         9.      This Court has subject matter jurisdiction over this Action under the Class Action

14  Fairness Act, 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds the sum of $5,000,000

15  exclusive of costs and interest, there are more than 100 putative Class members, and minimal

16  diversity exists because one or more of the putative Class members are citizens of a different

17  state than Defendant (for example, Plaintiff is a New York resident whereas Defendant's

18  principal place of business is located in Washington).

19         10.     This Court has personal jurisdiction over Defendant because Defendant

20  maintains its principal place of business in Seattle, Washington.  Furthermore, Defendant

21  intentionally availed itself of this jurisdiction by marketing, employing individuals, and providing

22  medical services in Washington.

23         11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant

24  operates in this District and a substantial part of the events, acts and omissions giving rise to

25  Plaintiff's claims occurred in this District.

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

### III.    PARTIES

***Plaintiff***

12.    Plaintiff Levy is a resident and citizen of the State of New York.  Plaintiff was a patient at Proliance and provided his name, date of birth, and PHI to Proliance in order to receive medical services.  Plaintiff received the Notice of Data Breach (the "Notice") dated November 20, 2023, which informed him that his sensitive PII was compromised in the Data Breach.

***Defendant Proliance Surgeons***

13.    Defendant Proliance Surgeons, Inc., P.S. is a Washington professional service corporation with its principal place of business at 805 Madison Street, Suite 901, Seattle, Washington 98104.

### IV.    FACTUAL ALLEGATIONS

***Defendant's Business***

14.    Proliance Surgeons is a major medical system located primarily in the state of Washington, serving patients from the Pacific Northwest.  Proliance has over 100 locations where it provides an array of medical services.

15.    In the ordinary course of receiving medical services from Proliance, patients are required to provide their PII, which is the set of information compromised in the Data Breach, as previously stated: name, date of birth, medical information, diagnosis and treatment information, health insurance information, and, for some, Social Security number.

16.    Prior to receiving care and treatment from Proliance, Plaintiff was required to and did in fact turn over much of the private and confidential information listed above. Additionally, with respect to PHI, Proliance may receive private and personal information from other individuals and/or organizations that are part of a patient's 'circle of care,' such as referring physicians, patients' other doctors, patients' health plan(s), close friends and/or family members.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

17.     Proliance also creates and maintains a considerable amount of PHI in the course of providing medical care and treatment.  This PHI includes billing account numbers, medical record numbers, dates of service, provider names, and medical and clinical treatment regarding care received from Proliance.  Because Proliance did not specify in its Notice the type of "medical information" that was compromised, all or some of this highly sensitive PHI could have been exposed in the Data Breach.

18.     According to Proliance's online Notice of Privacy Practices, "Proliance [] is committed to protecting the confidentiality of [] health information."  Proliance goes on to state: "[Proliance] is required by law to maintain the privacy of your Protected Health Information… even in electronic format, and to notify you following a breach of unsecured PHI." What the Notice of Privacy Practices does not state is that Proliance fails to prevent the disclosure of PHI to undisclosed third parties, like the cybercriminals that perpetrated the Data Breach.  The Notice of Privacy Practices assures Proliance's patients that their PHI will only be shared with third parties with express written authorization.

19.     As a condition of receiving services from Proliance, Proliance requires that its patients entrust it with highly sensitive personal information.

20.     By obtaining, collecting, using and deriving a benefit from Plaintiff's and Class members' PII, Defendant assumed express and implied legal and equitable duties and knew it was responsible for protecting Plaintiff's and Class members' PII from unauthorized disclosure.

21.     Plaintiff and the Class members have taken reasonable steps to maintain the confidentiality of their PII.

22.     Plaintiff and the Class members rely and relied upon Defendant to keep their PII confidential and securely maintained, and to use this information for business and health purposes only, and to only make authorized disclosures of this information.

### ***The Data Breach***

23.     On or about November 20, 2023, Proliance notified the United States Department of Health and Human Services ("HHS") of the Data Breach.  According to the report

CLASS ACTION COMPLAINT - 5

issued to HHS, 437,392 victims had their PII compromised by Proliance.  Concurrently, Proliance

disseminated Notices to the victims of the Data Breach on November 20, 2023, stating in

relevant part:

> Proliance Surgeons ("Proliance") is committed to our patients, their
> treatment, and their families – as well as protecting the privacy and
> security of their personal information.   We are writing with
> important information regarding a data security incident that may
> have impacted your personal information.  The privacy and security
> of the information we maintain is of the utmost importance to
> Proliance Surgeons.  We wanted to provide you with information
> about the incident and let you know that we continue to take
> significant measures to protect your information.
>
> **What Happened?**  Proliance detected certain systems within our
> network had been affected by a cybersecurity incident.   The
> incident resulted in the potential unauthorized access and/or
> acquisition of certain files from the network, which occurred on
> February 11, 2023.
>
> **What We Are Doing.**    Upon detecting the incident, Proliance
> commenced an immediate and thorough investigation, contained
> the network, alerted law enforcement, and notified certain
> individuals whose personal information was present in the above-
> mentioned files…  On May 24, 2023, [Proliance] discovered that
> certain files involved in the incident could have contained personal
> information but had not yet identified the specific individuals
> involved… [Proliance] conducted a detailed and comprehensive
> review of all of the data involved, and determined on September
> 22, 2023 that your information was present in the additional files
> potentially accessed and/or acquired by an unauthorized party.

24. Unfortunately, for victims, the Notice raises more questions than answers.

Specifically, (1) Proliance failed to disclose the Data Breach to individual victims for over nine

months, constricting any remedial measures victims might have been able to take once the

Data Breach was discovered, (2) Proliance failed to state in its Notice when the Data Breach

began, which would illuminate how long each victim's PII had been exposed, and (3) Proliance

failed to state in its Notice how remedial measures would prevent the same subset of PII from

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  being compromised again.  To make matters worse, the only remediation offered by Proliance

2  is a paltry 12 months of identity theft resolution services, which fails to appreciate that the

3  harm data breaches can cause and how their effects can ripple and impact victims for a

4  lifetime.

5       25.    Additionally, Proliance's omissions within the Notice are also important, (1)

6  Proliance failed to illuminate how the unauthorized actors gained access, (2) why and how

7  Proliance failed to detect the intrusion(s) of these unauthorized actors, and (3) how Proliance

8  intends to ensure that these incidents do not happen again.  These critical points remain

9  entirely unclear.

10      26.    But what is clear from the Notice is that cybercriminals did, in fact, access and

11  view Plaintiff's and Class members' PII and PHI during the period in which cybercriminals had

12  unfettered access to Defendant's IT network and the files that it contained. On information and

13  belief, the PII and PHI compromised in the files accessed by hackers was not encrypted.  This

14  can be presumed given the hackers were able to access the data that was listed as

15  compromised in the Notice.

16      27.    The removal of PHI and other PII from Proliance's system demonstrates that this

17  cyberattack was targeted due to Defendant's status as a healthcare facility that houses

18  sensitive PII and PHI.

19      28.    Due to Proliance's incompetent security measures and its incompetent response

20  to the Data Breach, Plaintiff and the Class members now face a present and substantial risk of

21  fraud and identity theft and must deal with that threat forever.  Equally troubling, Plaintiff and

22  the Class members now face a present and substantial risk of disclosure of their sensitive and

23  deeply private medical information which will impact them in perpetuity.

24      29.    Despite widespread knowledge of the dangers of identity theft and fraud

25  associated with cyberattacks and unauthorized disclosure of PII and PHI, Proliance provided

26  unreasonably deficient protections prior to the Data Breach, including a lack of security

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  measures for storing and handling patients' PII and PHI and inadequate employee training

2  regarding how to access, handle and safeguard this information.

3      30.    Proliance failed to adequately adopt and train its employees on even the most

4  basic of information security protocols, including: storing, locking, encrypting and limiting

5  access to current and former patients' highly sensitive PHI; implementing guidelines for

6  accessing, maintaining and communicating sensitive PHI; and protecting sensitive PHI by

7  implementing protocols on how to utilize such information.

8      31.    Proliance's failures caused the unpermitted disclosure of Plaintiff's and Class

9  members' PII to an unauthorized third party and put Plaintiff and Class members at serious,

10  immediate, and continuous risk of identity theft and fraud.

11      32.    The Data Breach that exposed Plaintiff's and Class members' PHI was caused by

12  Proliance's violation of its obligations to abide by best practices and industry standards

13  concerning its information security practices and processes.

14      33.    Proliance failed to comply with security standards or to implement security

15  measures that could have prevented or mitigated the Data Breach.

16      34.    Proliance failed to ensure that all personnel with access to its patients' PII and

17  PHI were properly trained in retrieving, handling, using and distributing sensitive information.

18  ***The Data Breach Was Foreseeable***

19      35.    Proliance has weighty obligations created by HIPAA, industry standards, common

20  law and its own promises and representations made to Plaintiff and Class members to keep

21  their PII and PHI confidential and to protect it from unauthorized access and disclosure.

22      36.    Plaintiff and Class members provided their PII and PHI to Proliance with the

23  reasonable expectation and mutual understanding that Proliance would comply with its

24  obligations to keep such information confidential and secure from unauthorized access.

25      37.    Proliance's data security obligations were particularly important given the

26  substantial increase in ransomware attacks and/or data breaches in the healthcare industry

27  preceding the date of the Data Breach.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

38.     Data breaches, including those perpetrated against the healthcare sector of the economy, have become extremely widespread.  According to HIPAA statistics, between 2009 and 2022, 5,150 healthcare data breaches of 500 victims or more occurred; and, of those breaches, the impermissible disclosure of 382,262,109 healthcare records occurred.  The rate of healthcare-related data breaches have also accelerated, with an average of approximately one large (500 victims or more) healthcare-related data breach per day in 2018 as compared to nearly two such data breaches per day in 2022.  In 2023 alone there have been many large healthcare-related data breaches with tens of millions of victims including the MOVEit data breaches (tens of millions of victims across multiple data breaches), HCA Healthcare (11,270,000 victims), Perry Johnson & Associates (8,952,212 victims), MCNA Dental (8,861,076 victims), and others.  As such, Proliance was aware of the risk of data breaches because such breaches have dominated the headlines in recent years.

39.     There is substantial evidence that data breaches in the healthcare sector harm patient outcomes.  According to a 2017 Vanderbilt University study titled "Do Hospital Data Breaches Reduce Patient Care Quality," "[h]ospital data breaches significant increase … mortality rate[.]  Data breaches may disrupt the processes of care that rely on health information technology.  Financial costs to repair a breach may also divert resources away from patient care.  Thus, breached hospitals should carefully focus investments in security procedures, processes, and health information technology that jointly lead to better data security and improved patient outcomes."

40.     Cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issued a warning to potential targets so they are aware of, and prepared for, a potential attack.  As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals … because they often have lesser IT defenses and a high incentive to regain access to their data quickly."

41.     According to a 2019 Health Information Management Systems Society, Inc. ("HIMMS") Cybersecurity Survey, "[a] pattern of cybersecurity threats and experiences is

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  discernable across U.S. healthcare organizations.  Significant security incidents are a near-

2  universal experience in U.S. healthcare organizations with many of the incidents initiated by

3  bad actors[.]"

4      42.    PII and PHI is of great value to hackers and cybercriminals, and the data

5  compromised in the Data Breach can be used in a variety of unlawful manners.  PII and PHI can

6  be used to distinguish, identify or trace an individual's identity, such as their name and medical

7  records.  This can be accomplished alone or in combination with other personal or identifying

8  information that is connected or linked to an individual, such as their birthdate, birthplace, and

9  mother's maiden name.

10     43.    Given the nature of the Data Breach, it is foreseeable that the compromised PII

11  and PHI can be used by hackers and cybercriminals in a variety of different ways.

12     44.    Therefore, the increase in such attacks, the attendant risk of future attacks, and

13  the harm that these attacks cause was widely known to the public and to anyone in the

14  healthcare industry, including to Proliance.

15     ***Defendant Failed to Follow FTC Guidelines***

16     45.    The Federal Trade Commission ("FTC") has promulgated numerous guides for

17  businesses which highlight the importance of implementing reasonable data security practices.

18     46.    According to the FTC, the need for data security should be factored into all

19  business decision-making.

20     47.    In 2016, the FTC updated its publication, Protecting Personal Information: A

21  Guide for Business, which established cyber-security guidelines for businesses.

22     48.    The guidelines note that healthcare businesses should protect the personal

23  patient information that they keep; properly dispose of personal information that is no longer

24  needed; encrypt information stored on computer networks; understand their network's

25  vulnerabilities; and implement policies to correct any security problems.

26     49.    The guidelines also recommend that businesses use an intrusion detection

27  system to expose a breach as soon as it occurs; monitor all incoming traffic for activity

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   indicating someone is attempting to hack the system; watch for large amounts of data being

2   transmitted from the system; and have a response plan ready in the event of a breach.

3       50.     The FTC further recommends that companies not maintain PII longer than is

4   needed for authorization of a transaction; limit access to sensitive data; require complex

5   passwords to be used on networks; use industry-tested methods for security; monitor for

6   suspicious activity on the network; and verify that third-party service providers have

7   implemented reasonable security measures.

8       51.     The FTC has brought enforcement actions against businesses for failing to

9   adequately and reasonably protect patient data, treating the failure to employ reasonable and

10  appropriate measures to protect against unauthorized access to confidential consumer data as

11  an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"),

12  15 U.S.C. § 45.  Orders resulting from these actions further clarify the measures businesses

13  must take to meet their data security obligations.

14      52.     Proliance's failure to employ reasonable and appropriate measures to protect

15  against unauthorized access to patients' PII and PHI constitutes an unfair act or practice

16  prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

17      53.     Proliance was always fully aware of its obligation to protect the PII and PHI of its

18  patients.  Proliance was also aware of the significant harm and repercussions that would result

19  from its failure to do so.

20      ***Defendant Failed to Meet Industry Standards***

21      54.     As detailed above, experts studying cyber security routinely identify healthcare

22  providers as being particularly vulnerable to cyberattacks because of the value of the PII and

23  PHI which they collect and maintain.

24      55.     Several best practices have been identified that, at a minimum, should be

25  implemented by healthcare providers such as Proliance, including but not limited to: educating

26  all employees; utilizing strong passwords; implementing multi-layer security, including firewalls,

27  anti-virus, and anti-malware software; encryption, making data unreadable without a key;

CLASS ACTION COMPLAINT - 11

1  employing multi-factor authentication; backing up data; limiting which employees can access

2  sensitive data.

3      56.    Other best cybersecurity practices that are standard in the healthcare industry

4  include installing appropriate malware detection software; monitoring and limiting the network

5  ports; protecting web browsers and email management systems; setting up network systems

6  such as firewalls, switches and routers; monitoring and protection of physical security systems;

7  and training staff regarding critical points.

8      57.    Proliance failed to meet the minimum standards of any of the following

9  frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-

10  1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3,

11  DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's

12  Critical Security Controls (CIS CSC), which are all established standards in reasonable

13  cybersecurity readiness.

14      58.    These foregoing frameworks are existing and applicable industry standards in the

15  healthcare industry.  Proliance failed to comply with these accepted standards, thereby opening

16  the door to and causing the Data Breach.

17      ***Defendant Failed to Comply with HIPAA***

18      59.    HIPAA requires covered entities to protect against reasonably anticipated threats

19  to the security of sensitive patient health information.

20      60.    Covered entities must implement safeguards to ensure the confidentiality,

21  integrity, and availability of PHI.  Safeguards must include physical, technical, and

22  administrative components.

23      61.    Title II of HIPAA contains what are known as the Administrative Simplification

24  provisions.  These provisions require, among other things, that the Department of Health and

25  Human Services ("HHS") create rules to streamline the standards for handling PHI and PII like

26  the data Proliance left unguarded.

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

62.     The HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.306(a)(1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D) and 45 C.F.R. § 164.530(b).

63.     A data breach such as the one Proliance experienced, is also considered a breach under the HIPAA Rules because there is an access of PHI not permitted under the HIPAA Privacy Rule.  A breach under the HIPAA Rules is defined as "...the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI." *See* 45 C.F.R. 164.40.

64.     Data breaches are Security Incidents under HIPAA because they impair both the integrity (data is not interpretable) and availability (data is not accessible) of patient health information:

> The presence of ransomware (or any malware) on a covered entity's or business associate's computer systems is a security incident under the HIPAA Security Rule.  A security incident is defined as the attempted or successful unauthorized access, use, disclosure, modification, or destruction of information or interference with system operations in an information system. *See* definition of security incident at 45 C.F.R. 164.304.  Once the ransomware is detected, the covered entity or business associate must initiate its security incident and response and reporting procedures. *See* 45 C.F.R.164.308(a)(6).

65.     Proliance's Data Breach resulted from a combination of insufficiencies which demonstrate that Proliance failed to comply with safeguards mandated by HIPAA regulations.

### ***Defendant's Breach***

66.     Proliance breached its obligations to Plaintiff and Class members and was otherwise negligent because it failed to properly maintain and safeguard its computer systems, network and data.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

67.     Proliance's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.      Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b.      Failing to adequately protect consumers' PHI and other PII;

c.      Failing to properly monitor its own data security systems for existing intrusions, brute-force attempts and clearing of event logs;

d.      Failing to ensure the confidentiality and integrity of electronic PHI it created, received, maintained and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

e.      Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.      Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

g.      Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

h.      Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

i.      Failing to protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

health information in violation of 45 C.F.R. § 164.306(a)(3);

j.      Failing to ensure compliance with HIPAA security standard rules by its workforces in violation of 45 C.F.R. § 164.306(a)(4);

k.      Failing to train all members of its workforces effectively on the policies and procedures regarding PHI as necessary and appropriate for the members of its workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b); and/or

l.      Failing to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as it had not encrypted the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key," 45 CFR § 164.304 (definition of encryption).

68.      As a result of allowing its computer systems to fall into dire need of security upgrading and its inadequate procedures for handling cybersecurity threats, Proliance negligently and unlawfully failed to safeguard Plaintiff's and the Class members' PII and PHI.

69.      Accordingly, as detailed below, Plaintiff and Class members now face a substantial, increased, and immediate risk of fraud, identity theft, and the disclosure of their most sensitive and deeply personal medical information.

### The Harm Data Breaches Cause

70.      The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

71.     That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data.  Indeed, the reason criminals steal personally identifiable information is to monetize it.

72.     They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims, or take over victims' identities in order to engage in illegal financial transactions under the victims' names.  Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains regarding a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim.

73.     For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number.

74.     Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

75.     The FTC recommends that identity theft victims take various steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert, reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.

76.     Theft of PII and PHI is gravely serious.  The value of PII and PHI is extremely valuable.  Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences.  Even this obvious risk to reward analysis illustrates that PII and PHI has considerable market value.

77.     Theft of PHI, in particular, is momentous: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

provider, or get other care.  If the thief's health information is mixed with yours, your

treatment, insurance and payment records, and credit report may be affected."

78.    Drug manufacturers, medical device manufacturers, pharmacies, hospitals and

other healthcare service providers often purchase PII and PHI on the black market for the

purpose of target marketing their products and services to the physical maladies of the data

breach victims themselves.  Insurance companies purchase and use wrongfully disclosed PHI to

adjust their insureds' medical insurance premiums.

79.    It must also be noted there may be a substantial time lag — measured in years

— between when harm occurs and when it is discovered, and also between when PII, PHI,

and/or financial information is stolen and when it is used.

80.    According to the U.S. Government Accountability Office, which conducted a

study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data
> may be held for up to a year or more before being used to commit
> identity theft.  Further, once stolen data have been sold or posted
> on the Web, fraudulent use of that information may continue for
> years.  As a result, studies that attempt to measure the harm
> resulting from data breaches cannot necessarily rule out all future
> harm.

81.    PII and PHI is such a valuable commodity to identity thieves that once the

information has been compromised, criminals often trade the information on the "cyber black-

market" for years.

82.    There is a strong probability that entire batches of information stolen in the Data

Breach have been dumped on the black market or will be dumped on the black market,

meaning Plaintiff and Class members are at an increased risk of fraud and identity theft for

many years into the future.

83.    Thus, Plaintiff and Class members must vigilantly monitor their financial and

medical accounts for many years to come.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

84.    Sensitive PII and PHI can sell for as much as $363 per record according to the Infosec Institute.

85.    PII is particularly valuable because criminals can use it to target victims with frauds and scams.

86.    Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

87.    Medical information is especially valuable to identity thieves.

88.    Because of the value of its collected and stored data, the medical industry has experienced disproportionally higher numbers of data theft events than other industries.

89.    For this reason, Defendant knew or should have known about these dangers and strengthened its network and data security systems accordingly.  Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.

### *Harm to Plaintiff and Class Members*

90.    On or about November 20, 2023, Plaintiff received notice from Proliance that his PII had been improperly accessed and/or obtained by unauthorized third parties.  This notice indicated that Plaintiff's PII and PHI was compromised as a result of the Data Breach.

91.    As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, and reviewing his credit reports and financial account statements for any indications of actual or attempted identity theft or fraud.  Plaintiff has already spent significant time (at least multiple hours) dealing with the Data Breach, valuable time Plaintiff otherwise would have spent on other activities.

92.    Plaintiff suffered actual injury from having his PII and PHI compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his PII, a form of property that Proliance obtained from Plaintiff; (b) violation of his privacy

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

93.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.  As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V.     CLASS ALLEGATIONS

94.     This Action is properly maintainable as a class action.  Plaintiff brings this nationwide class action lawsuit on behalf of himself and all other similarly situated persons pursuant to Fed. R. Civ. P. 23.  The nationwide class Plaintiff seeks to represent is defined as follows:

> **Class Definition.** All individuals residing in the United States whose PII and/or PHI was compromised in the Data Breach as announced by the Defendant in November of 2023.

95.     Excluded from the Class are:  Defendant and Defendant's subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; Plaintiff's counsel; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

96.     Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

97.     <u>Numerosity</u>.  Defendant reports that the Data Breach compromised PII and PHI of over 430,000 current and former patients.  Therefore, the members of the Class are so numerous that joinder of all members is impractical.

98.     <u>Commonality</u>.  There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members.  These common questions of law and fact include, without limitation:

a.     Whether Defendant unlawfully used, maintained, lost or disclosed Plaintiff's and Class members' PII and PHI;

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1          b.       Whether Defendant failed to implement and maintain reasonable

2   security procedures and practices appropriate to the nature and scope of the information

3   compromised in the Data Breach;

4          c.       Whether Defendant's data security systems prior to and during the Data

5   Breach complied with applicable data security laws and regulations;

6          d.       Whether Defendant's data security systems prior to and during the Data

7   Breach were consistent with industry standards;

8          e.       Whether Defendant owed a duty to Class members to safeguard their PII

9   and PHI;

10          f.       Whether Defendant breached its duty to Class members to safeguard

11   their PII and PHI;

12          g.       Whether computer hackers obtained Class members' PII and PHI in the

13   Data Breach;

14          h.       Whether Defendant knew or should have known that its data security

15   systems and monitoring processes were deficient;

16          i.       Whether Plaintiff and Class members suffered legally cognizable damages

17   as a result of Defendant's misconduct;

18          j.       Whether Defendant failed to provide notice of the Data Breach in a

19   timely manner; and

20          k.       Whether Plaintiff and Class members are entitled to damages, equitable

21   relief declaratory relief and/or injunctive relief.

22          99.      Typicality.  Plaintiff's claims are typical of those of other Class members because

23   Plaintiff's PII and PHI, like that of every other Class member, was compromised by the Data

24   Breach.  Further, Plaintiff, like all Class members, was injured by Defendant's uniform conduct.

25   Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class

26   members, and there are no defenses that are unique to Plaintiff.  The claims of Plaintiff and

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   those of other Class members arise from the same operative facts and are based on the same

2   legal theories.

3         100.   <u>Adequacy of Representation</u>.  Plaintiff will fairly and adequately represent and

4   protect the interests of the Class members in that he has no disabling or disqualifying conflicts

5   of interest that would be antagonistic to those of the other members of the Class.  The

6   damages and infringement of rights Plaintiff suffered are typical of other Class members, and

7   Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class.  Plaintiff has

8   retained counsel experienced in complex consumer class action litigation, including data breach

9   class action litigation, and Plaintiff intends to prosecute this action vigorously.

10         101.   <u>Superiority of Class Action</u>.  A class action is superior to other available methods

11   for the fair and efficient adjudication of this controversy, as the pursuit of numerous individual

12   lawsuits would not be economically feasible for individual Class members, and certification as a

13   class action will preserve judicial resources by allowing the Class' common issues to be

14   adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in

15   individual actions that are based on an identical set of facts.  In addition, without a class action,

16   it is likely that many members of the Class will remain unaware of the claims they may possess.

17         102.   The litigation of the claims brought herein is manageable.  Proliance's uniform

18   conduct, the consistent provisions of the relevant laws and the ascertainable identities of Class

19   members demonstrates that there would be no significant manageability problems with

20   prosecuting this lawsuit as a class action.

21         103.   Adequate notice can be given to Class members directly using information

22   maintained in Defendant's records.

23         104.   <u>Predominance</u>.  The issues in this action are appropriate for certification because

24   such claims present only particular, common issues, the resolution of which would advance the

25   disposition of this matter and the parties' interests therein.

26         105.   This proposed class action does not present any unique management difficulties.

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**FIRST CAUSE OF ACTION**

**NEGLIGENCE**

106.    Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

107.    Defendant required Plaintiff and Class members to submit non-public personal information in order to obtain medical services.

108.    Plaintiff and Class members are individuals who provided certain PII and PHI to Defendant including the PII and PHI described above.

109.    Defendant had full knowledge of the sensitivity of the PII and PHI to which it was entrusted and the types of harm that Plaintiff and Class members could and would suffer if the information were wrongfully disclosed.

110.    Defendant had a duty to Plaintiff and each Class member to exercise reasonable care in holding, safeguarding and protecting that information.

111.    Plaintiff and  Class members were the foreseeable victims of any inadequate safety and security practices.

112.    Plaintiff and Class members had no ability to protect their data in Defendant's possession.

113.    By collecting and storing this data in its computer property, and by sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its computer property — and Plaintiff's and Class members' PII and PHI held within it — to prevent disclosure of the information and to safeguard the information from theft.

114.    Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

115.    Defendant owed a duty of care to safeguard the PII and PHI of Plaintiff and Class members in its custody.  This duty of care arises because Defendant knew of a foreseeable risk

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    to the data security systems it used.  Defendant knew of this foreseeable risk because of the

2    explosion of data breach incidents involving healthcare providers detailed above.  Despite its

3    knowledge of this foreseeable risk, Defendant failed to implement reasonable security

4    measures.

5        116.    Defendant owed a duty of care to Plaintiff and Class members to provide data

6    security consistent with industry standards and other requirements discussed herein, and to

7    ensure that its systems and networks, and the personnel responsible for them, adequately

8    protected the PII and PHI.

9        117.    Defendant's duty of care to use reasonable security measures arose as a result of

10    the special relationship that existed between Defendant and its client patients, which is

11    recognized by laws and regulations including, but not limited to, HIPAA, as well as the common

12    law.

13        118.    Defendant was in a position to ensure that its systems were sufficient to protect

14    against the foreseeable risk of harm to Class members from a data breach.

15        119.    Defendant's duty to use reasonable security measures under HIPAA required

16    Defendant to "reasonably protect" confidential data from "any intentional or unintentional use

17    or disclosure" and to "have in place appropriate administrative, technical, and physical

18    safeguards to protect the privacy of protected health information."  45 C.F.R. § 164.530(c)(1).

19        120.    Some or all of the medical information at issue in this Action constitutes

20    "protected health information" within the meaning of HIPAA.

21        121.    In addition, Defendant had a duty to employ reasonable security measures under

22    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . .

23    practices in or affecting commerce," including, as interpreted and enforced by the FTC, the

24    unfair practice of failing to use reasonable measures to protect confidential data.

25        122.    Defendant's duty to use reasonable care in protecting confidential data arose

26    not only as a result of the statutes and regulations described above, but also because

27    Defendant is bound by industry standards to protect confidential PII and PHI.

CLASS ACTION COMPLAINT - 23

123.    Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect the Class members' PHI and PII.

124.    The specific negligent acts and omissions committed by Defendant includes, but are not limited to, the following:

a.    Failing to adopt, implement and maintain adequate security measures to safeguard Class members' PII and PHI;

b.    Failing to adequately monitor the security of its networks and systems;

c.    Failure to periodically ensure that its network system had plans in place to maintain reasonable data security safeguards;

d.    Allowing unauthorized access to Class members' PII and PHI;

e.    Failing to detect in a timely manner that Class members' PII and PHI had been compromised;

f.    Failing to timely notify Class members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

g.    Failing to have mitigation and back-up plans in place in the event of a cyber- attack and data breach.

125.    It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and the Class members' PII and PHI would result in injury to Plaintiff and the Class members.

126.    Further, the breach of security was reasonably foreseeable given the known high frequency of hacking incidents, cyberattacks, and data breaches in the healthcare industry.

127.    It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and Class members' PII and PHI would result in one or more types of injuries to Class members.

128.    Plaintiff and Class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

129.    Plaintiff and the Class members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

future annual audits of those systems and monitoring procedures; and (iii) provide adequate

credit monitoring to all Class members.

**SECOND CAUSE OF ACTION**

**BREACH OF IMPLIED CONTRACT**

130.    Plaintiff realleges and incorporates by reference all proceeding paragraphs as if

fully set forth herein.

131.    Defendant provides medical treatment and care to Plaintiff and Class members.

Defendant formed an implied contract with Plaintiff and Class members through their collective

conduct.

132.    Through Defendant's provision of medical services, it knew or should have

known that it must protect Plaintiff's and Class members' confidential PII and PHI in accordance

with Defendant's stated policies, practices and the applicable law.

133.    As consideration, Plaintiff and Class members turned over valuable PII and PHI in

exchange for either medical services.

134.    Defendant accepted possession of Plaintiff's and Class members' PII and PHI for

the purpose of providing medical services to Plaintiff and the Class members.  In delivering their

PII and PHI to Defendant, Plaintiff and the Class members intended and understood that

Defendant would adequately safeguard the PII as part of the provision or receipt of those

services.

135.    Defendant's implied promises to Plaintiff and Class members include, but are not

limited to: (1) taking steps to ensure that anyone who is granted access to PII and PHI also

protects the confidentiality of that data; (2) taking steps to ensure that the PII and PHI placed in

control of Defendant's employees is restricted and limited only to achieve authorized business

purposes; (3) restricting access to employees and/or agents who are qualified and trained; (4)

designing and implementing appropriate retention policies to protect PII and PHI; (5) applying

or requiring proper encryption and/or the separation of different data sets; (6) implementing

multifactor authentication for access; and (7) taking other steps to protected against

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    foreseeable breaches.

2        136.    Plaintiff and Class members would not have entrusted their PII and PHI to

3    Defendant in the absence of such an implied contract.

4        137.    Defendant violated these implied contracts by failing to employ reasonable and

5    adequate security measures to secure Plaintiff's and Class members' PII and PHI.

6        138.    Plaintiff and Class members have been damaged by Defendant's conduct,

7    including the harms and injuries arising from the Data Breach now and in the future, as alleged

8    herein.  Plaintiff seeks damages in an amount to be proven at trial.

9                                    **THIRD CAUSE OF ACTION**

10                    **WASHINGTON DATA BREACH NOTICE ACT, RCW 19.255, *et seq.***

11        139.    Plaintiff realleges and incorporates by reference all proceeding paragraphs as if

12    fully set forth herein.

13        140.    Defendant is a business within the meaning of RCW 19.255.010(1).

14        141.    Defendant is required to accurately notify Plaintiff and Class members following

15    discovery or notification of the breach of its data security systems if personal information was,

16    or is reasonably believed to have been acquired by an unauthorized person and the personal

17    information was not secured, in the most expedient time possible and without unreasonable

18    delay under RCW 19.255.010(1), (8).

19        142.    Because Defendant discovered a breach of its data systems in which Plaintiff's

20    and Class members' personal information was, or is reasonably believed to have been, acquired

21    by an unauthorized person and the personal information was not secured, Defendant had an

22    obligation to disclose the Data Breach in a timely and accurate fashion.

23        143.    By failing to disclose the Data Breach in a timely and accurate manner,

24    Defendant violated RCW 19.255.010(1).

25        144.    As a direct and proximate result of Defendant's violations of RCW 19.255.010(1),

26    Plaintiff and Class members suffered damages, as described above.

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

145.    Plaintiff and Class members seek relief under RCW 19.255.040(3)(a) and 19.255.040(3)(b), including nominal damages, actual damages, and injunctive relief.

**FOURTH CAUSE OF ACTION**

**WASHINGTON CONSUMER PROTECTION ACT, RCW 19.86, *et seq.***

146.    Plaintiff realleges and incorporates by reference all proceeding paragraphs as if fully set forth herein.

147.    Defendant is a person within the meaning of the Washington Consumer Protection Act, RCW 19.86.010 and it conducts "trade" and "commerce" within the meaning of RCW 19.86.010(2).

148.    Plaintiff and Class members are "persons" within the meaning of RCW 19.86.010(1).

149.    Defendant engaged in unfair or deceptive acts or practices in the conduct of its business by the conduct set forth above.  These unfair or deceptive acts or practices include the following:

a.    failing to adequately secure Plaintiff's and Class members' sensitive personal information from disclosure to unauthorized third parties or for improper purposes;

b.    enabling the disclosure of personal and sensitive facts about Plaintiff and Class members in a manner highly offensive to a reasonable person;

c.    enabling the disclosure of personal and sensitive facts about Plaintiff and Class members without their informed, voluntary, affirmative, and clear consent;

d.    omitting, suppressing, and concealing the material fact that Defendant did not reasonably or adequately secure Plaintiff's and Class members' sensitive personal information; and

e.    Failing to disclose the Data Breach in a timely and accurate manner.

150.    Defendant's systematic acts or practices are unfair because these acts or practices (1) caused substantial financial injury to Plaintiff and Class members; (2) are not

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  outweighed by any countervailing benefits to consumers or competitors; and (3) are not

2  reasonably avoidable by consumers.

3      151.    Defendant's systematic acts or practices are unfair because the acts or practices

4  are immoral, unethical, oppressive, and/or unscrupulous.

5      152.    Defendant's systematic acts or practices are deceptive because they were and

6  are capable of deceiving a substantial portion of the public.

7      153.    Defendant's unfair or deceptive acts or practices have repeatedly occurred in

8  trade or commerce within the meaning of RCW 19.86.010 and RCW 19.86.020.

9      154.    Defendant's acts complained of herein are ongoing and/or have a substantial

10  likelihood of being repeated.

11      155.    Defendant's unfair or deceptive acts or practices impact the public interest

12  because they have injured Plaintiff and Class members.

13      156.    As a direct and proximate result of Defendant's unfair or deceptive acts or

14  practices, Plaintiff and Class members have suffered injury in fact and lost money.

15      157.    As a result of Defendant's conduct, Plaintiff and Class members have suffered

16  actual damages including from fraud and identity theft, time and expenses related to

17  monitoring their financial accounts for fraudulent activity, an increased and imminent risk of

18  fraud and identity theft, the lost value of their personal information, and other economic and

19  non-economic harm.

20      158.    Plaintiff and Class members are therefore entitled to legal relief against

21  Defendant, including recovery of nominal damages, actual damages, treble damages, injunctive

22  relief, attorneys' fees and costs, and such further relief as the Court may deem proper.

23      159.    Plaintiff and Class members are also entitled to injunctive relief in the form of an

24  order prohibiting Defendant from engaging in the alleged misconduct and such other equitable

25  relief as the Court deems appropriate

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## VI.    PRAYER FOR RELIEF

160.    WHEREFORE, Plaintiff, on his own behalf and on behalf of all others similarly situated, prays for relief as follows:

A.    For an Order certifying this case as a class action and appointing Plaintiff and his counsel to represent the Class;

B.    For an award of monetary damages in an amount to be determined, as allowable by law;

C.    For an award of equitable and injunctive relief on behalf of himself and the Class;

D.    For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

E.    Pre- and post-judgment interest on any amounts awarded; and

F.    Such other and further relief as the Court may deem just and proper.

## VII.    JURY TRIAL DEMAND

161.    Plaintiff hereby demands a trial by jury of all claims so triable.

RESPECTFULLY SUBMITTED AND DATED this 4th day of December, 2023.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/Beth E. Terrell, WSBA #26759
    Beth E. Terrell, WSBA #26759
    Email: bterrell@terrellmarshall.com
By: /s/Blythe H. Chandler, WSBA #43387
    Blythe H. Chandler, WSBA #43387
    Email: bchandler@terrellmarshall.com
By: /s/Amanda M. Steiner, WSBA #29147
    Amanda M. Steiner, WSBA #29147
    Email: asteiner@terrellmarshall.com
    936 N. 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone: (206) 816-6603

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Israel David, *Pro Hac Vice Forthcoming*
israel.david@davidllc.com
Blake Hunter Yagman, *Pro Hac Vice Forthcoming*
blake.yagman@davidllc.com
ISRAEL DAVID LLC
17 State Street, Suite 4010
New York, New York 10004
Telephone: (212) 739-0622

*Attorneys for Plaintiff Levy and the Proposed Class*

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com